R. P. GAILLARD *v.* J. O. NICOLAS.

A person receiving a quit claim, does not thereby acknowledge the party granting it to be the true
owner of the property; and where it does not appear that the latter was the owner, a judgment
against him, not recorded at the time of the quit claim, will not affect the property abandoned.
C. C. 3926.

APPEAL from the District Court of the Parish of Lafourche Interior.   *Cole,*
J.  *C. A. Johnson,* for plaintiff and appellant.   *J. C. & A. Beatty,* for
defendants.

SLIDELL, C. J.　The plaintiff holds a judgment against *Joseph Nicolas*, recorded in August, 1841, and seeks to enforce his judicial mortgage upon certain slaves, and a tract of land in the possession of the defendant.

The tract of land in question, has one arpent front on the right bank of the Lafourche, by about forty in depth.

The plaintiff bases his alleged right of judicial mortgage, as to this tract of land, upon the fact, that in 1836, *J. Nicolas* executed under private signature to his brother, the defendant, a quit claim of all his interest in this tract—tous mes droits et toutes mes prétentions sur une terre, &c., which act was not recorded until October, 1841, after the registration of the plaintiff's judgment.

It does not appear that *Joseph Nicolas* ever had a valid title to this tract. All we know of his interest is deducible from the face of the deed of quit claim; and at the time of the sale, and before, *J. O. Nicolas* was in possession of the tract. By accepting this quit claim under such circumstances, *J. O. Nicolas* cannot be considered as acknowledging *Joseph Nicolas* as the owner of the tract at the time of the sale; and we are therefore not able to say that there is error in the judgment below, refusing the plaintiff the right of enforcing on this tract a judgment not recorded at the time this quit claim was made. See Civil Code, Art. 3296.

A judicial mortgage upon the slaves is claimed upon similar grounds, to wit, that on the 2d July, 1836, by two acts under private signature, not recorded until 12th October, 1841, *Joseph* conveyed them to his mother and the defendant. But it also appears, that on the 12th October, 1841, there was also recorded a conveyance by the mother and brother, of the same slaves, with other property, made by private signature, and bearing the same date, 2d July, 1836. The way in which these private writings came to be recorded was this: The attorney of plaintiff had charged the brothers with simulation, and *Joseph Nicolas* voluntarily produced the private writings, which had been signed in duplicate, and gave them to the attorney, who had all three recorded. The evidence shows that these slaves were in the possession of *J. O. Nicolas* and his mother, previous to the signing of these private writings, and have so remained ever since. Parol evidence was offered by the defendant, to show the reason of these conveyances, and the circumstances under which they were made, but the plaintiff resisted in the court below any explanatory evidence by parol, and insists it should be disregarded here. He rests his claim to a judicial mortgage upon the ground, that the execution of these two conveyances to the defendant and his mother, amounted to an acknowledgment on their part of title in *Joseph Nicolas*, on the 2d July, 1836, and that the conveyance is inoperative against his judicial mortgage, which he says attached upon the slaves by its registry before these private writings were recorded.

But in our opinion, this position cannot be maintained upon these instruments, coupled as they are with the fact, that the conveyance of the same slaves by his mother and brother to *Joseph*, bear date the same day and were recorded simultaneously, and that the possession of his brother and mother continued after the sale. These three instruments, all bearing date the same day, are to be taken as parts of the same transactions; and while they show divestiture from *J. O. Nicolas* and his mother, of the ownership of this and other property on the 2d of July, 1836, they also show an immediate reinvestiture of part of the property thus conveyed, to wit, the slaves, in *J. O. Nicolas* and his mother respectively; two of the slaves and their children being con-

veyed to the former, and one slave with her children to the latter. Thus, by a simultaneous transaction, the title passed to, and immediately from *Joseph Nicolas;* there was no continuing estate vested in him upon which, five years subsequently, the judicial mortgage could operate; and so far as the registry law is involved, the record which exhibited a transient investiture of the title in him, showed, at the same time, its simultaneous transmission to those from whom he received it.

The plaintiff was, however, entitled to exercise his judicial mortgage on the interest in a portion of the slaves which, as admitted, *Joseph* subsequently acquired by inheritance from his mother; and as his claim, even to that extent, was resisted by the defendant, we see no reason to change the judgment below as to costs, from which the appellee, in his answer to the appeal, asks to be relieved.

Judgment affirmed, with costs of the appeal, to be paid by the plaintiff.